UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TERRY H. FULLWILEY<br><br>    Plaintiff,<br><br>vs.<br><br>UNION PACIFIC CORPORATION (a Utah Corporation), and UNION PACIFIC RAILROAD COMPANY (a Delaware Corporation),<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR RULE 35 EXAMINATION**<br><br>Civil No. 2:04-CV-00671 DB<br><br>District Judge: Dee Benson<br><br>Magistrate Judge: David Nuffer |

Plaintiff sues his employer for workplace discrimination. Plaintiff claims he "has experienced and continued to experience, severe emotional distress"[1] and "extreme emotional harm"[2] and alleges distinct causes of action for negligent and intentional infliction of emotional distress.[3]

Defendants moved, pursuant to Fed. R. Civ. P. 35 for a medical examination[4] of Plaintiff. Defendants claim that the examination is "routine discovery on a critical area of inquiry in this litigation . . . on [Plaintiff's] emotional condition. . . . [Plaintiff] has brought two separate emotional distress claims [and] alleges that [Defendants] caused him "severe," "extreme" and

---

[1] Complaint, docket no. 1, ¶¶ 29, 45 and 46.

[2] *Id*. ¶ 36.

[3] Second and Third Claims for Relief, *id.* at 11- 12.

[4] Docket no. 96, filed June 23, 2005.

ongoing emotional distress, that he sought professional treatment for his condition, and that his alleged damages stem almost solely from his claimed emotional distress . . . ."[5] Therefore, Defendants seek an order requiring Plaintiff to submit to a battery of psychological tests.[6]

Plaintiff "has not alleged damages resulting from lost wages and/or benefits,"[7] but is seeking general damages flowing from the wrongful acts, in large part defined by the emotional distress claims.

Plaintiff visited with a mental health professional on four occasions,[8] who diagnosed general anxiety and moderate depression.[9] The professional did not administer any of the tests proposed by Defendants.[10]

Plaintiff has not filed a report for a mental health expert and has not designated an expert to testify at trial.[11]

## Applicable Standards

A medical examination is available to an opposing party under Fed. R. Civ. P. 35(a) if "the mental or physical condition . . . of a party or of a person . . . is in controversy" and the movant

---

[5] *Id.* at 1-2.

[6] Defendants' Memorandum in Support of Motion for Rule 35 Medical Examination (Defendants' Memorandum in Support) at 5, docket no. 79, filed under seal May 27, 2005.

[7] Plaintiff's Responses to Defendants' First Set of Interrogatories . . . at 7, attached to Defendants' Memorandum in Support at iii.

[8] Plaintiff's Supplemental Memorandum in Opposition to Defendants' Memorandum in Support of Motion for Rule 35 Medical Examination (Plaintiff's Supplemental Memorandum) at 2, docket no. 111, filed under seal July 12, 2005.

[9] Plaintiff's Memorandum in Opposition to Defendants' Memorandum in Support of Motion for Rule 35 Medical Examination (Plaintiff's Memorandum in Opposition), docket no. 85, filed under seal June 9, 2005.

[10] *Id.* at 5 and Plaintiff's Supplemental Memorandum at 5.

[11] Plaintiff's Memorandum in Opposition at ii.

shows "good cause."[12]  Rule 35 is the only discovery rule that requires a motion, a showing of good cause, and an order.[13]  This is because the examination is so invasive.  "Mental and physical examinations are only to be ordered upon a discriminating application . . . of the limitations prescribed by the Rule."[14]

### Is Plaintiff's Mental or Emotional Condition in Controversy?

Under the criteria[15] which the parties agree control, a plaintiff making a "garden-variety" claim of emotional distress is not generally subject to a mental examination.[16]  Such a claim does not put mental or emotional condition "in controversy."  A medical examination may, however, be ordered if one or more of the following are present:

> (1) plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress;
> (2) plaintiff has alleged a specific mental or psychiatric injury or disorder;
> (3) plaintiff has claimed unusually severe emotional distress;
> (4) plaintiff has offered expert testimony in support of her claim for emotional distress damages;  and
> (5) plaintiff concedes that her mental condition is "in controversy" within the meaning of Fed.R.Civ.P. 35(a).[17]

---

[12]   Fed. R. Civ. P. 35(a).

[13]   *Schlagenhauf v. Holder,* 379 U.S. 104, 117 (1964).

[14]   *Id.* at 121.

[15]   *Fox v. The Gates Corporation*, 179 F.R.D. 303 (D. Colo 1998).

[16]   *See* Plaintiff's Memorandum in Opposition at vi, 2 and n.3 and letter from Defendants' counsel to Plaintiff's counsel dated May 11, 2005, attached as Exhibit C to Defendants' Reply Memorandum in Support of Motion for Rule 35 Medical Examination (Reply Memorandum), docket no. 90, filed under seal June 17, 2005.

[17]   *Fox*, 179 F.R.D. at 307 (paragraphing added).

Here, the first and third criteria are satisfied by the claims plead and the language of the pleadings.[18] The emotional condition of Plaintiff is in controversy.

## Has Good Cause Been Shown?

The second prong of the Rule 35 test requires a little more analysis. Few reported cases discuss this analysis, indicating the battles are fought in determining whether mental and emotional condition are "in controversy." Special caution is required in evaluating the types of psychological tests proposed because "mental examinations are particularly sensitive (usually more so than physical examinations), both because of the very different (and lesser) degree of objectivity that they are typically able to provide and because of the special dangers of intrusiveness that they present."[19]

When the parties argued this motion,[20] the magistrate judge did not have enough information about the tests proposed to determine if "good cause" was present. The parties filed additional information, which is very complete and helpful.

## Proposed Tests

Defendants seek the ability to perform four tests, which will take a day or two, and to use two professionals for the testing and for a subsequent diagnostic interview. The tests[21] include:

---

[18] Plaintiff's assertions about the nature of the claims to the contrary (Plaintiff's Memorandum in Opposition at 3) are noted and rejected.

[19] *Jansen v. Packaging Corp. of America,* 158 F.R.D. 409, 410 (N.D. Ill. 1994).

[20] Hearing June 29, 2005, minute entry at docket no. 105.

[21] Information on these tests is available in John Parry, *Civil Law Handbook on Psychiatric and Psychological Evidence and Testimony* at 79-83 (2001); Daniel W. Shuman, *Psychiatric and Psychological Evidence* 2nd Ed. §§ 2.16 - 2.18 (2004); and at http://www.pearsonassessments.com/tests and http://www.sigmaassessmentsystems.com/, last visited August 2, 2005.
    MMPI-2 http://www.pearsonassessments.com/tests/mmpi_2.htm
    PAI - http://www.sigmaassessmentsystems.com/pai.htm
    MCMI III – http://www.pearsonassessments.com/tests/mcmi_3.htm

>Minnesota Multiphasic Personality Inventory (MMPI-2);
>Personality Assessment Inventory (PAI);
>Millon Test (MCMI III); and
>Rorschach Test.[22]

Of these tests, the first three (MMPI-2, PAI and MCMI III) are multiple choice tests, calling for answers to standard, predefined questions. The MMPI-2 and MCMI III use true false questions. In the fourth test, the Rorschach Test, "the clinician [shows] ten (10) cards to the patient, which the patient is then asked to describe."[23] The narrative form of the responses contrasts with the other tests. The length of the tests and time required for the tests varies.

| Test | Nature of Inquiry | # of Questions | Time to Complete |
| --- | --- | --- | --- |
| MMPI-2 | True/False | 567 | 60-90 minutes |
| PAI | False/ Slightly True/ Mostly True/ True | 344 | 50-60 minutes |
| MCMI III | True /False | 175 | 20-30 minutes |
| Rorschach | open narrative answer | 10 cards | 30-40 minutes |

Defendants also propose a **diagnostic interview** to follow the tests.[24] Defendants state the "report based on the data generated from the aforementioned multi-instrument testing battery will inform [the] subsequent diagnostic interview and allow . . . focus on specific areas of significance in order to form an expert opinion regarding the existence, extent, nature, and causation of Mr. Fullwiley's claimed emotional distress."[25] Little information was provided by Defendants on the

---

Rorschach – http://www.pearsonassessments.com/tests/rorschach.htm

[22] Defendants' Supplemental Memorandum at iii.

[23] *Id*. at vii. quoting Declaration of David Ranks ¶ 12, attached to Defendants' Supplemental Memorandum.

[24] Second Declaration of Noel Gardner ¶ 2, attached to Defendants' Supplemental Memorandum.

[25] *Id*. ¶ 5.

interview, presumably because Plaintiff, while resisting any examination, feels that an interview is all that should be permitted.[26]

The literature describes an interview as consisting of a taking of history, establishment of rapport and conduct of a structured mental status examination with "observations, interview questions, and simple testing procedures."[27]  It is "a comprehensive evaluation of the patient's current psychological functioning."[28]

Overall, the testing times aggregate 2 ½ to 4 hours (see above table) and the interview time is estimated to 1 ½ to 2 hours.[29]  Generally, the written examinations are conducted by one professional on one day and the interview is conducted by another professional on a subsequent day.[30]

The **purposes** of the tests are different.  Defendants state the MMPI-2 will "provide excellent diagnostic information about various aspects of emotional functioning . . . ."[31]  It "provides a generalized assessment of whether a patient is experiencing anxiety or depression . . . ."[32]  The PAI identifies "important components of emotional distress" and is "specifically designed to eliminate gender, race, and age bias in the test questions."[33]  The

---

[26] Plaintiff's Supplemental Memorandum at 8.

[27] Shuman, *supra* note 21, § 2.15.

[28] *Id.*

[29] Declaration of Noel Gardner ¶¶ 4-6, attached to Reply Memorandum and Reply Memorandum at 6 n.7.

[30] *Id.*

[31] Defendants' Supplemental Memorandum at v, quoting Declaration of David Ranks ¶ 9.

[32] *Id.* at vi, quoting Declaration of David Ranks ¶ 10.

[33] *Id.*

MCMI III assesses "an individual's long-term personality functioning" and is useful in "detecting inherent conditions in a patient's personality that predate the events giving rise to the alleged emotional distress . . . ."[34] The Rorschach test is designed to "evaluate whether Plaintiff has any perceptuial biases or cognitive distortions that predispose him to the type of emotional distress he describes, whether he is currently experiencing the distress he claims, and what the likely sources are . . . ."[35] Defendant asserts it "is far less vulnerable to purposeful distortion than the other three tests . . . ."[36]

The **combination** of the tests is significant. A single test has been shown to have a seventy percent error rate compared to the result after multiple tests were administered.[37] This is due to the inherent limitations of each method,[38] and "a patient's ability to purposefully distort test results."[39]

### Has Good Cause Been Shown to Permit the Tests and Examination?

Plaintiff argues that these tests are not permissible in employment cases on the authority of a case in another district.[40] In that case the magistrate judge considered several of the employee's arguments against testing:

(1) the intrusiveness of a number of the questions posed in the tests,

---

[34] *Id* at vi and vii, quoting Declaration of David Ranks ¶ 11.

[35] *Id*. at vii, quoting Declaration of David Ranks ¶ 12.

[36] *Id*.

[37] Defendants' Supplemental Memorandum at iv, quoting Declaration of David A. Ranks ¶ 4. Defendants do not suggest a percentage of accuracy of diagnosis made after the combined testing.

[38] *Id*. quoting Declaration of David A. Ranks ¶ 5.

[39] *Id*. quoting Declaration of David A. Ranks ¶ 6.

[40] *Usher v. Lakewood Engineering and Mfg. Co.*, 158 F.R.D. 411 (N.D. Ill. 1994).

(2) the appropriateness of many aspects of the tests for what is at issue in this case,
(3) the opportunity that the tests afford to obtain answers to questions that would not be permitted as part of normal discovery,
(4) the potential, assertedly implicit in certain of the tests, for obtaining mind-control information and
(5) the nonutility of some of the tests to determine Usher's mental condition at a time in the past rather than at the present time.[41]

In that case, the magistrate judge concluded that the array of proposed tests[42] failed to meet the *Daubert*[43] requirement of reliability.[44] The court also determined that the proposed tests did not pass the hurdle of Fed. R. Evid. 403, holding their "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."[45]

## Mental Health Testing Generally - Factors for Analysis

The use of mental health testing in court has little reliable precedent. Most of these issues are decided at the trial level, where an abuse of discretion standard protects the decision from meaningful review.

---

[41]  *Id.*, 158 F.R.D. at 413 (paragraphing added).

[42]  1. an MMPI-II (Minnesota Multiphasic Personality Inventory) exam consisting of 567 questions;
2. the Rorschach Test;
3. the T.A.T. (Thematic Apperception Test);
4. the Shipley Institute for Living Scale (IQ estimate);
5. the Sixteen Personality Factors Inventory;  and
6. the MCMI-II or MCMI-III (both popularly known as the Millon test) consisting of 175 questions.
*Usher*, 158 F.R.D. at 412.

[43]  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[44]  *Daubert* referred to this factor as "known rates of error," while *Usher* referred to "correlation" and "validity."

[45]  Fed. R. Evid. 403.

8

There are few cases since principles for evaluation of expert testimony were announced in *Daubert*. Among the factors *Daubert* requires be considered are:

(a) Is the theory or technique testable or falsifiable,
(b) has the theory or technique been subjected to peer review and publication,
(c) is there a known or potential error rate and standards for controlling the technique's operation, and
(d) is the technique or methodology generally accepted in the scientific community?[46]

"Some have claimed that *Daubert* and *Kumho Tire*, if taken seriously, herald the end of much behavioral science testimony . . . . It must be acknowledged that a significant amount of the testimony offered by psychiatrists, psychologists, and social workers is not based on rigorous scientific testing."[47]  One author claims that "clinical judgment" cannot meet the *Daubert* standard, while admitting that results of standardized testing may be admissible.[48]  Another text suggests that case law supports diagnosis based on clinical evaluation.[49]  There is a substantial reported debate on the utility of the Rorschach test in litigation, as an example of the potential weakness of all mental health sciences under *Daubert*.[50]

---

[46]   David Medoff, *The Scientific Basis of Psychological Testing: Considerations Following Daubert, Kumho, and Joiner*, 41 Fam. Ct. Rev. 199, 199-200 (2003).

[47]   Christopher Slobogin, *Pragmatic Forensic Psychology: A Means of "Scientizing" Expert Testimony from Mental Health Professionals?*, 9 Psychol. Pub. Policy & Law 275, 287 (2003) (citing Michael J. Gottesman, *Admissibility of Expert Testimony after Daubert: The "Prestige" Factor*, 43 Emory L. J. 867, 875-76 (1996) and Michael H. Graham, *Daubert v. Merrell Dow Pharmaceuticals, Inc.: No Frye, Now What?*, 30 Brim. L. Bull. 153, 162 (1994)).  *See also* Shuman, *supra* note 21, § 7.04 ; Kenneth S. Pope, *The MMPI, MMPI-2 and MMPI-A in Court* Second Edition, at 3 and 54 (2000); and Parry, *supra* note 21, at 24-25.

[48]   Edmund H. Mantell, *A Modest Proposal to Dress the Emperor: Psychiatric and Psychological Opinion in the Courts*, 4 Widener J. Pub. L. 53, 62-63 (1994).

[49]   Pope, *supra* note 46, at 54.

[50]   The articles in this debate series, in chronological order are:  W. M. Grove, *Protecting the integrity of the legal system: The admissibility of testimony from mental health experts under Daubert/Kumho analyses*, 5 Psychology, Public Policy, and Law 224 (1999); Christina L. Studebaker, *Protecting the Integrity of Rorschach Expert Witnesses,* 8 Psychology, Public Policy, and Law 201 (2002); W. M. Grove, *Failure of Rorschach-Comprehensive-System-Based Testimony to be admissible under the Daubert-Joiner-Kumho Standard,* 8

Another court[51] has suggested that mental examinations should be subject to Fed. R. Civ. P. 26(b)(2) which allows a court to limit discovery "if the burden or expense of the proposed discovery outweighs its likely benefit."[52] The court should consider the intrusiveness of the proposed examination and weigh it against the potential benefit to the litigation.

**Analysis**

At this stage the magistrate judge is deciding whether the Plaintiff should be subject to testing, not whether the reports or testimony of the examining professionals are admissible. Plaintiffs have pointed out that in another case in this district, the same professionals were limited in their testimony and their reports were excluded from evidence principally because they invaded the province of the jury.[53] The admissibility of the professionals' reports and testimony remains to be determined in this case, but the magistrate judge has considered the possibility that Defendants' efforts may be somewhat futile. On the other hand, Defendants are entitled to prepare their case for the possibility that the evidence may be admissible.

In reviewing the *Daubert* factors first, it is apparent that psychological testing is not subject to the same testing and protections against falsification as other empirical testing. The validity of a psychiatric or psychological diagnosis is rarely examined, except to determine whether others reach the same diagnosis. And, "in many instances a group of psychiatrists

---

Psychology, Public Policy, and Law 216 (2002); Christina L. Studebaker, *A Final Reply to Grove and Barden, The Relevance of the Rorschach Comprehensive System for Expert Testimony,* 8 Psychology, Public Policy, and Law 235 (2002).

[51] *Ricks v. Abbott Laboratories*, 198 F.R.D. 647, 648-49 (D.Md. 2001).

[52] Fed. R. Civ. P. 26(b)(2).

[53] Order in *EEOC v. Sbarro's Italian Eatery et al.*, Case No. 2:00 CV 774 DB, docket no. 244, filed April 28, 2003, attached to Plaintiff's Supplemental Memorandum.

diagnosing the same person disagree among themselves over the diagnosis from 60 to 80 percent of the time."[54] This reflects on the "error rate" factor referenced in *Daubert.*

The tests themselves are subject to debate as to validity. While the MMPI has been used in courts to evaluate the existence, diagnosis and causation of psychological injuries,[55] and "the MMPI has been found to be the most helpful psychological test in identifying exaggeration and minimization of symptoms . . . *it will not identify all malingering and erroneously identifies malingering in other instances.*"[56]

The techniques and methodology are generally accepted in the community of psychologists and psychiatrists, and are subject to peer review and publication, but *there is no demonstration of the utility of the tests in employment litigation*.  In fact the sources the parties have provided and that the magistrate judge has consulted are surprisingly devoid of any significant reference to employment cases, except for consideration of the "in controversy" requirement.  Most of the cases refer to cases involving physical injury or criminal cases.  The *Daubert* factors do not favor the testing.

Beyond *Daubert*, practical considerations in this case cause concern.  Most importantly, the diagnostic interview and Rorschach test have the potential to be improper and unregulated discovery, with significant evidentiary consequences.  Defendants' agent will be able to propose questions without restraint.  The statements the Plaintiff makes to the examining professionals may be admissible as a basis for the opinion of the professional, even if they are not admissible

---

[54]     Shuman, *supra* note 21, § 7.05.  This statement precedes a discussion of diagnosis under the DSM-IV, which ends with references to uses of the testing in the criminal law setting.

[55]     Cases cited in Pope, *supra* note 46, at 58.

[56]     Shuman, *supra* note 21, § 14.05 (emphasis added).

under the rules of evidence.[57]  The potential to skew the litigation by such testimony is large.  Interestingly, this potential is most present in the diagnostic interview testing, which Plaintiff resists the least.  However, the district judge may be able to limit any abusive or prejudicial use of inadmissible evidence at trial, to restrict evidence where "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."[58]

Further, the questions and questioning in all tests will be intrusive, by the subject matter, number of questions and time required.   The decision to permit testing and examination is significant to Plaintiff personally.  This factor does not favor examination or testing.

The examination is somewhat appropriate to the issues in the case.  Plaintiff has consulted with a mental health professional, who has made diagnoses.  And the fact that Plaintiff's professional did not pursue testing does not mean Defendants should not have the opportunity, particularly when emotional distress damages are so significant in the case.  This factor favors some examination.

---

[57] The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
Fed. R. Evid. 803(4).  See also William J. Smith, *How to Prepare For, Oppose, and Defeat Requests for Mental Examinations* (ABA TIPS National Institute on Sexual Harassment) [Westlaw Citation] N97SHCB ABA-LGLED G at *G-4 (1997). "Thus, in California a psychologist could testify about what she observed when her patient related memories of childhood sexual abuse without there ever being a court ruling on the reliability of repressed memory evidence." Parry *supra* note 21, at 21.

[58] Fed. R. Evid. 403.

Finally, it is not clear whether "the burden or expense of the proposed discovery outweighs its likely benefit."[59]  Because of the likelihood that the evidence may be totally or partially excluded, there is no advantage to either party on this factor.

## Conclusion

Based on consideration of all the foregoing factors, the magistrate judge concludes that the Defendants should be permitted an examination roughly comparable to that engaged in by Plaintiff's treating professional.  Therefore, a diagnostic interview will be permitted, to take no more than two and one-half (2 ½) hours.  The interviewer will not attempt to ask any questions to which objection was made during the depositions, and the Plaintiff shall be permitted to consult with counsel by telephone if any such question is posed.  The examiner shall not report the examination or opinions to anyone other than outside retained counsel for Defendants, and as required in the course of testimony.

## ORDER

IT IS HEREBY ORDERED that the motion for a medical examination[60] is GRANTED IN PART as provided herein.

Dated this 2nd day of August, 2005.

BY THE COURT

_____
David Nuffer
United States Magistrate Judge

---

[59] Fed. R. Civ. P. 26(b)(2).

[60] Docket no. 96, filed June 23, 2005.